## Sabatino Magnani, Appellee, v. Spring Valley Coal Company, Appellant.

### Gen. No. 5,956. (Not to be reported in full.)

Appeal from the Circuit Court of Bureau county; the Hon. JOE A. DAVIS, Judge, presiding. Heard in this court at the April term, 1914. Affirmed. Opinion filed October 13, 1914. Rehearing denied April 7, 1915. *Certiorari* denied by Supreme Court (making opinion final).

### Statement of the Case.

Action by Sabatino Magnani against the Spring Valley Coal Company to recover for injuries sustained while in the employ of the defendant as a miner. From a judgment in favor of the plaintiff for $1,500, the defendant appeals.

On August 29, 1912, the plaintiff worked without his "buddy." The mine was to close that day at 1:30 p. m. Shortly after 1 o'clock the car he had in the entry was loaded. He applied to the driver to take the loaded car out, so that he could set in an empty and begin loading it, and was informed that the loaded car would not be taken out until next morning, so he could not do any further work until the car was taken out. He started walking in an entry towards the shaft, and when at a point where there was a sharp decline he was struck and injured by a trip consisting of a driver and one mule drawing two empty cars. There was no brake on the cars and the driver had no sprags and could do nothing to lessen the speed of the car, except with his feet, which would not impede the motion of the car to any great extent. In going down the incline the head car ran against the mule and the mule ran rapidly to keep out of the way of the car. After Magnani started towards the shaft, his light went out. He saw the car coming, but because his light was out the driver could not and did not see him until just before the trip reached him.

When Magnani saw the car coming he started running from the car and going from side to side of the entry, seeking for a place of refuge, which he was unable to find. The entry was so narrow that the car could not pass him. While running, Magnani struck his head against a low place in the roof and was knocked down and run over by one or both of the cars, and seriously injured.

The proof introduced by plaintiff tended to show that the roadway had been brushed in from the outside for a certain distance and then at the place where plaintiff struck his head against the roof the brushing had ceased, and that there was a sharp drop in the height of the roof and that plaintiff struck his head against that. The oral evidence and a plat introduced by the defendant showed that forty feet inside the entry way the roof was 7.3 feet high on the right-hand side and 7.2 feet high on the left-hand side, while ten feet further on it was 4.2 feet high on the right and 5.1 feet high on the left, showing a drop in the roof somewhere within that distance of ten feet of over three feet on one side and over two feet on the other. Plaintiff testified that as he ran to get away from the trip he held his head down low.

McDOUGALL, CHAPMAN & BAYNE and JOSEF T. SKINNER, for appellant; MASTIN & SHERLOCK, of counsel.

J. L. MURPHY and JAMES P. LAWSON, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

### Abstract of the Decision.

1. MINES AND MINERALS, § 108*—*when low roof in entry way must be marked.* When the roof of an entry way in a mine is so low as to be dangerous to employees rightfully traveling therein,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

it is such a condition which the spirit of the Mining Act requires to be marked and removed.

2. MINES AND MINERALS, § 182*—*when question for jury whether low roof in entry way dangerous condition.* Whether the roof of an entry way in a mine was so low as to constitute a condition dangerous to miners is a question for the jury.

3. MINES AND MINERALS, § 108*—*when low roof of entry way must be marked.* If the roof of an entry way in a mine is so low as to be dangerous to miners rightfully using it, it is the duty of the employer to conspicuously mark the place, to enter a report thereof in the books kept for that purpose and not to permit miners to use the entry way until the dangerous condition is removed.

4. MINES AND MINERALS, § 174*—*sufficiency of evidence to show dangerous condition of low roof of entry way.* The evidence in an action for injuries sustained by a miner who was knocked down by the low roof of a mine entry way, *held* to justify a finding that the place was dangerous.

5. MINES AND MINERALS, § 106*—*effect of rule prohibiting use of hauling ways by miners during working hours.* A rule of a mining company requiring miners to keep off hauling ways and away from the bottom of shafts during working hours while the mine was in operation does not constitute a defense to an action for injuries sustained by a miner from being run down by a car while he was traveling through an entry way to the shaft after he had been prevented from completing his day's work, since such rule violated sec. 17 of the Mining Act (J. & A. ¶ 7486), providing that men who have completed their day's work or who have been prevented from finishing work shall come to the shaft to be hoisted out.

6. MINES AND MINERALS, § 91*—*right of miner to use passageways.* The requirement of the Mining Act for places of refuge not over sixty feet apart in the sides of the passageways of a mine permits miners to use such passageways at any time.

7. MINES AND MINERALS, § 194*—*instruction as to rule prohibiting miners using hauling ways during working hours.* In an action for injuries received by a miner by being run over by a car while he was on his way from work to the bottom of a shaft, the court properly declined an instruction regarding a rule of the employer requiring miners to keep off the hauling ways and away from the bottom of the shaft while the mine was in operation during working hours, since the rule conflicted with the provisions of the Mining Act permitting miners to come to the bottom of shafts to be hoisted to the surface when their work was finished or they were prevented from continuing their work.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

8. MINES AND MINERALS, § 193*—*instruction as to recovery for permanent injury to miner.* An instruction in an action for injuries sustained by a miner, as to his right to recover for permanent injuries, *held* sustained by evidence that eighteen months after the injury one knee was one and one-half inches larger in circumference than the other, although a physician testified that in his opinion the knee would be normal in six or eight months.